## IN THE UNITED STATES DISTRICT COURT WESTERN DISTRICT OF TENNESSEE

Glenda Glinsey,

       Plaintiff,                                    **Case: 2:18-cv-2736**

         v.

City of Memphis,
Memphis Police Department,
and Memphis Police Department Officers to be later named, in their individual capacity and in their capacity as Memphis Police Department Officers

       Defendants.

### A JURY IS RESSPECTFULLY DEMANDED

### Complaint

**COMES NOW** Plaintiff, Glenda Glinsey, and brings this cause of action against the named Defendants.

This is an action at law to redress the deprivation under color of statute, ordinance, regulation, custom or usage of a right, privilege, equal protection, and immunity secured to Plaintiff by the Fourth and Fourteenth Amendments of the United States Constitution, 42 U.S.C. § 1983, and 42 U.S.C. § 1985 (2), and (3) .  In addition, this action is brought pursuant to the Tennessee Governmental Tort Liability Act.

## I.       Jurisdiction And Venue

1.      Plaintiff is a citizen of the state of Tennessee, residing in Memphis, Tennessee,

Shelby County, and has been a resident continuously, and at all relevant times involving this matter.

2.      Defendant, City of Memphis, is responsible for the administration and governance of the Memphis Police Department, which is located in Shelby County, Tennessee.

3.      Defendants Memphis Police Officers, currently unnamed, were at all relevant times officers employed with the Memphis Police Department.

4.      The facts and occurrences hereinafter set forth took place in Shelby County, Tennessee.

5.      Jurisdiction is proper in this Court under 28 U.S.C. § 1391 and 28 U.S.C. § 1331.

## II.    Facts

6.      On April 16, 2015, Plaintiff wrote a complaint to Colonial Houston, a commander at the Crump Police Station.

7.      Plaintiff complained of unfair treatment towards her.

8.      Plaintiff is a landlord.

9.      Plaintiff complained that on April 1, 2015, Regina Thompson was someone presently on her property being abusive and violent towards her, which caused Plaintiff to call the police.

10.     Ms. Thompson's behavior was witnessed in part by Officer Welch, and Officer Hawkins, yet the officers refused to arrest the tenant, or protect Plaintiff in any way.

11.     Instead, the officers yelled at Plaintiff and told her that she was "starting up stuff."

12.     It was not until Ms. Thompson and her son became violent towards a tenant until the police officers escorted Ms. Thompson off of the property.

−2−

13.     Once informed that Ms. Thompson was not on a lease, the officers informed

Plaintiff that she should have said that at the beginning, to save everyone some time,

as if Plaintiff had inconvenienced everyone because she was threatened and feared for

her safety.

14.     Plaintiff was advised that she could place Ms. Thompson on an AOA

(Authorization of Agency Affidavit), which is designed to help the police more

effectively deal with loiterers and trespassers.

15.     Plaintiff immediately went the Crump Station Police Department and placed Ms.

Thompson on an AOA.

16.     On April 4, 2015, Ms. Thompson was back on Plaintiff's property, and the

Memphis Police Department was called.

17.     Officer Hawkins arrived and after being reminded of the AOA, placed Ms.

Thompson in his police car without placing any handcuffs on Ms. Thompson.

18.     It is standard practice that the Memphis Police Department will place suspects in

their car in this manner when they intend to drive for a short distance, and then let the

person out of the car.

19.     On April 5, 2015, Plaintiff verified with the Shelby County Jail that there was no

arrest or booking of Ms. Thompson.

20.     On April 6, 2015, Plaintiff reported this conduct to Lieutenant Jones, who stated

that she would pass the information along to Officer Hawkins' supervisor and that

Plaintiff would get a call later that day.

21.     To this date Plaintiff has never received a call regarding this matter.

−3−

22.    On April 6, 2015, in a separate incident, Plaintiff sought an AOA on someone else being disruptive on her property.

23.    The AOA was completely filled out, however the Memphis Police Department informed Plaintiff that they were refusing to authorize it because the person complained of had minor children who were disabled, and the officers did not know where the children would go if removed from Plaintiff's property.

24.    The officers offered no legal, or legitimate basis as to why they would not protect Plaintiff.

25.    On April 7, 2015, Plaintiff went to police director Tony Armstrong's office, and informed Lieutenant Brown, assistant to the director, of what was occurring.

26.    On April 25, 2015, a letter by tenant Aretha Williams, was written on behalf of Plaintiff, explaining the concerns she had for Plaintiff's safety as it related to Plaintiff's tenant Zach Harris, who had commented that he would harm Plaintiff, and that the police department would not intervene because they do not care about Plaintiff, due to all the complaints that she makes.

27.    This letter was also provided to the Memphis Police Department.

28.    On April 27, 2015, Plaintiff also wrote a letter to the District Attorney's office, informing them of what was occurring.

29.    On February 2, 2016, Plaintiff had an altercation with a tenant, and Plaintiff was arrested by the Memphis Police Department, and charged with Aggravated Assault.

30.    The motivation behind the prosecution was the fact that Plaintiff's history of complaints against the police department.

–4–

31.     The case was dismissed on April 3, 2017.

32.     On May 9, 2017, tenant DeAngelo Smith was stopped by the Memphis Police Department for a broken tail light.  Once pulled over, Mr. Smith was informed that it was not him that they were looking for, but Plaintiff, who they were going to get for always going up to the 12th floor (the place in 201 Poplar where citizens can go to file complaints) and messing with them.

33.     On May 21, 2017, witness Lisa Smith was visiting her mother at one of Plaintiff's apartments.

34.     During this visit, the police made the scene and realized that someone named DaQuala Phillips was present on the property, who had a warrant for her arrest.

35.     However, the Memphis Police Department officers refused to arrest her, and stated that they would not arrest her because they do not do anything for Plaintiff, because she goes up to the 12th floor.

36.     On September 21, 2017, witness Michael Steve Taylor heard Memphis Police Officers stating that they do not do anything for Plaintiff.

37.     This was in relation to Mr. Taylor calling the police regarding someone causing disruptive conduct on Plaintiff's property.

38.     On April 9, 2018, Plaintiff called the Memphis Police Department regarding a formerly evicted tenant, Lorie Smith, who returned to the property and threatened Plaintiff.

39.     On April 10, 2018, Plaintiff was informed by a Detective Willard, that no action would be taken, even though Plaintiff was seeking to prosecute.

40. On June 13, 2018, Plaintiff went to Internal Affairs and spoke to Detective Tabler about all the problems that she was having, and that the police department was refusing to assist her.

41. Plaintiff was informed that she would be called in two days with a resolution.

42. On June 14, 2018, Plaintiff was then informed that they would not be able to do anything.

43. No explanation of why they would not be able to assist was provided, and they refused to put their response in writing.

44. On September 3, 2018, Plaintiff went by her apartments on a burglary and utility theft call.

45. During that time, the officers informed the tenants that Plaintiff's property was not fit to live in, and that they were going to get her apartments shut down because they did not like her.

### a.) Tennessee Governmental Tort Liability Act

46. Plaintiff incorporates all previous paragraphs as if restated verbatim.

47. T.C.A. 29-20-201(a) generally provides municipalities and governmental entities with immunity from suit.

48. However, based on the conduct of the governmental employees and pursuant to T.C.A. 29-20-205 (1) (2), the Tennessee Governmental Tort Liability Act immunity is removed from the city of Memphis.

### b.) 42 U.S.C. 1983

49. Plaintiff incorporates all previous paragraphs as if restated verbatim.

50. Defendant, City of Memphis, has failed to provide adequate training or supervision for its police officers and that this failure has become a custom that has resulted in repeated and substantial harassment to Plaintiff, who receives no protection from the police department.

51. Defendant, City of Memphis was aware of the conduct that the officers have engaged in, and was aware of how that conduct would lead to the types of injuries in which Plaintiff has suffered.

52. However, the City of Memphis chose not to take remedial action or provide adequate training, supervision, or discipline for its police officers, and these failures were the proximate cause of Plaintiff's injuries.

53. Furthermore, the City of Memphis understood the conduct as described in this Complaint to be routine, and the conduct was supported by the City of Memphis.

54. Once being made aware of these incidents, the City of Memphis has entered into no investigation, and has supported the actions of the officers.

55. No discipline of the officers has occurred based on what has transpired.

56. Plaintiff's right to privacy, and protection of her property has not been enforced by Defendants.

57. Defendants has ignored its duty to protect and serve, and has openly acknowledged that it will continue to ignore that duty when it comes to Plaintiff.

58. Defendants, while acting under the color of law, has allowed criminal conduct to occur, and has not tried to prohibit it, in hopes that it would cause harm to Plaintiff.

59. Defendants have violated Plaintiff's rights by failing to arrest criminal

–7–

perpetrators, and by failing to at a minimum, complete police reports so that proper records of the conduct can be stored.

60.     Defendants have committed defamation and slander, when they talked bad of Plaintiff, and blamed her for going to the 12th floor, as well as described her property as not being fit to live in.

### c.)  Negligence

61.     Plaintiff incorporates all previous paragraphs as if restated verbatim.

62.     The City of Memphis failed to provide adequate training or supervision of its officers, including the other Defendants, and this failure to train or supervise has resulted in repeated and substantial harassment to Plaintiff.

63.     Defendants failed to provide police reports, or properly respond to Plaintiff's complaints or concerns.

64.     To the extent that there was a response, Defendants have failed to put those responses in writing, or to give a detailed response which is adequate under the circumstances.

65.     Defendants have a duty to protect and serve, and to arrested wrongdoers, when they are aware.

66.     Defendants have a duty to complete police reports, and to address the concerns of its citizens.

### III.     <u>Prayer For Relief</u>

Plaintiff incorporates by reference, as if fully set forth verbatim, each and every allegation in the Complaint.

−8−

Based on the conduct of Defendants, it is clear that Defendants have acted intentionally, fraudulently, and maliciously.

Defendants conduct has left Plaintiff mentally and emotionally exhausted, frustrated, embarrassed, and concerned for her safety.

Plaintiff was incarcerated in 2016, and forced to spend money associated with legal fees and expenses in order to prove her innocence.  Plaintiff has clearly suffered embarrassment, indignity, disgrace, and shame.  Defendants conduct was intentional, and without any regard for Plaintiff's emotional health, or her freedom.

Furthermore, Plaintiff has been paying, through taxes, sales tax, and other means, whether directly or indirectly, for the protection and services of the Memphis Police Department, which she does not receive.

**WHEREFORE**, Premises Considered:

1. Plaintiff sues Defendants for injuries caused by Defendants, as spelled out above, and prays for a judgment against Defendants for compensatory damages in an amount considered fair and reasonable by a jury, not to exceed one hundred thousand dollars ($100,000) and for all such further relief, both general and specific, to which Plaintiff may be entitled under the premises.

2. Plaintiff sues Defendants for injuries caused by Defendants, in its fraudulent and intentional conduct, and prays for a judgment against Defendants in an amount considered fair and reasonable by a jury, not to exceed five hundred thousand dollars ($500,000) in punitive damages.

Respectfully Submitted,

_s/Terrell Tooten__
BPR 028506
1160 Vickery Ln, Suite 2
Cordova, TN, 38016
(901) 304-8539 office
(901) 347-8776 fax
x99tooten@gmail.com